

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

GMP:JPL
F. #2013R01789/OCDETF #NY-NYE-745

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

January 16, 2018

By ECF

The Honorable Eric N. Vitaliano
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Joseph Asmar
                  Criminal Docket No. 15-491 (ENV)

Dear Judge Vitaliano:

        The government respectfully submits this letter in advance of the defendant Joseph Asmar's sentencing, which is currently scheduled for January 18, 2018 at 11:00 a.m. For the reasons set forth below, the government respectfully requests that the Court impose a sentence within the applicable United States Sentencing Guidelines range ("Guidelines" or "U.S.S.G.").

I.    Facts

        This case arose from a Drug Enforcement Administration ("DEA") undercover operation. Presentence Investigation Report dated October 20, 2017 ("PSR") ¶ 3.[1] In approximately October 2013, a confidential source ("CS1") working with the DEA and posing as an individual who works with drug traffickers was offered money laundering services by a co-conspirator ("CC1"). Id. Specifically, CC1 stated that s/he had associates in Lebanon, including a lawyer (the defendant), who could arrange to launder drug proceeds through a Lebanon-based financial institution. Id. CS1 later introduced CC1 to a DEA undercover agent (the "UC") and to a second confidential source ("CS2") working with the DEA. Id.

        In November 2014, the UC and CS2 spoke with the defendant and CC1 and discussed meeting with the defendant in person. Id. ¶ 4. In March 2015, CS2 met with the

---

[1] The government has no objections to the PSR.

defendant and CC1 in Paris, France, to finalize details relating to the delivery and laundering the equivalent of approximately $250,000 in Euros (€), that were represented to be narcotics proceeds.  Id.  During the meeting, CS2 informed the defendant and CC1 that his/her associates would be importing a shipment of narcotics into Belgium and, therefore, would have additional narcotics proceeds to be laundered.  Id.  The defendant and CC1 indicated that they would be able to assist CS2's drug trafficking associate.  Id.

In March 2015, the UC gave CC1 approximately €214,460 (approximately $250,000) in cash, in a bag.  Id. ¶ 5.  Later that month, the same amount of money, less a 20 percent commission that had been agreed upon between the UC, the defendant and CC1, was received in a DEA undercover bank account.  Id.

During a series of subsequent conversations and meetings that took place in Brooklyn, New York, in June 2015, the defendant discussed his worldwide money laundering network including components within the Middle East, Europe, Africa, South America, and cities across the United States.  Id. ¶ 6.  The defendant also indicated that he had access to Lebanese financial institutions and knew how to make large amounts of money appear to be legitimately-derived.  Id.  During the meetings, the UC and CS2 made it clear that they were drug traffickers who needed to launder narcotics proceeds including, for example, telling the defendant that they could obtain a "contract" for laundering up to $8 million in narcotics proceeds.  Id.  The defendant informed the UC and CS2 that he would charge a 20 percent commission for providing the requested money laundering services.  Id.  The defendant also mentioned that he was associated with Hezbollah, that his "people" could provide security for narcotics shipments at transshipment points in Africa and the Middle East, and that he wanted to purchase thousands of handguns and heavy weapons for his associates.  Id.

Following the June 2015 meetings, the defendant remained in communication with the UC and agreed, for a 12 percent commission, to conduct a bulk money transaction of represented narcotics proceeds in Belgium.  Id. ¶ 7.  In September 2015, the UC handed the equivalent of approximately $150,000 in Euros to two of the defendant's associates.  Id.  After dropping the money off to the defendant's associates, the UC notified the defendant via text message that s/he had delivered the Euros, and that all had gone well with the transaction.  Id.

On October 1, 2015, the defendant was indicted for money laundering conspiracy and money laundering, in violation of Title 18, United States Codes, Sections 1956(a)(3)(B) and 1956(h).  He was arrested in France on October 8, 2015, and subsequently extradited to the United States in December 2016.  On May 26, 2017, the defendant pled guilty before the Court, pursuant to a plea agreement, to Count One of the above-captioned indictment charging conspiracy to engage in money laundering, in violation of Title 18, United States Code, Section 1956(h).  The defendant has been in custody since his October 2015 arrest in France.

II.   Guidelines Calculation

Consistent with both the PSR and with the plea agreement in this case, the parties agree that the following Guidelines calculation should apply to the defendant:

|  | |  |
|---|---|---:|
| Base Offense Level (§ 2S1.1(a)(2)) | | 8 |
| Plus: | Value of Laundered Funds More Than $250,000 (§ 2B1.1(b)(1)(G)) | +12 |
| Plus: | Belief That Laundered Funds Were Proceeds of Narcotics Trafficking (§ 2S1.1(b)(1)) | +6 |
| Less: | Acceptance of Responsibility (§ 3E1.1(a), (b)) | -3 |
| Total: | | **23** |

Because the defendant falls within Criminal History Category I, with a total adjusted offense level of 23, the applicable Guidelines range of imprisonment is 46-57 months.

III.   Analysis

The defendant conspired to launder hundreds of thousands of dollars knowing and believing that the money to be laundered represented the proceeds of illegal narcotics trafficking. His crimes involved planning and coordination with multiple co-conspirators, access to financial institutions across continents, and a network of money launderers and criminal associates around the world. Indeed, by his own account, the defendant was able to launder money in parts of the Middle East, Europe, Africa, South America and cities across the United States, and he has connections to members of Hezbollah, a designated foreign terrorist organization.

Moreover, the scope of the defendant's criminal schemes was not limited to laundering narcotics proceeds, but also included making overtures, albeit unsuccessful ones, to facilitate transnational drug shipments and arms dealing. The defendant argues that his crimes were considerably out of character. However, that the defendant was seemingly so well-connected to so many different criminal networks seems to suggest not that the defendant's crimes were out of character, but that the government's investigation revealed his true character. Although the defendant has no criminal history, the fact that he engaged in these serious crimes while also practicing as an attorney – a profession devoted to ethics, integrity, and the rule of law – is particularly noteworthy and is a factor that weighs heavily against the defendant.

IV.      Conclusion

        The government respectfully requests that the Court impose a sentence that is sufficient, but not greater than necessary, to achieve the goals of sentencing. See 18 U.S.C. § 3553(a). In this case, that is a sentence within the applicable Guidelines range of 46 to 57 months' imprisonment because such a sentence would serve the ends of justice by reflecting the serious nature of the offense, promoting respect for the law and deterring others from engaging in similar criminal conduct.

                                    Respectfully submitted,

                                    RICHARD P. DONOGHUE
                                  United States Attorney

                      By:              /s/
                                  Jonathan P. Lax
                                  Assistant U.S. Attorney
                                  (718) 254-6139

cc:     Sanford Talkin, Esq. (counsel to defendant) (by ECF and email)
        Aaron Altman, Esq. (counsel to defendant) (by ECF and email)
        Senior U.S.P.O. Cheryl M. Fiorillo (by email)

4